IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CLEOTHER TIDWELL, # N-41754,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-0384-SMY |
| ) | |
| **WARDEN OF MENARD,** ) | |
| **MONICA NIPPE, LORI OAKLEY,** ) | |
| **and THE WHOLE LAW LIBRARY STAFF,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Cleother Tidwell, an inmate currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Tidwell alleges that the harms giving rise to his claims occurred while he was incarcerated at Menard Correctional Center ("Menard"). Namely, he claims that Defendants interfered with his First Amendment rights by denying him access to legal mail materials or by screening his outgoing legal mail. He also alleges that grievance staff and the Warden perpetuated the First Amendment violations by failing to address his grievances. Tidwell further claims that if his rights were violated, a conspiracy existed. In connection with his claims, Tidwell names the Warden of Menard, Monica Nippe (CCI), Lori Oakley, and "the whole law library staff." He seeks monetary compensation for each letter he was prevented from sending as well as injunctive relief directing the prison to provide him with adequate supplies to conduct his legal mail.

The First Amended Complaint is now before the Court for review. The Court's May 2, 2016 Order informed Tidwell that the First Amended Complaint would entirely supersede his

previous filings and that it would not be accepted in a piecemeal fashion. Accordingly, this review only considers the First Amended Complaint and the exhibits appended to that document (Doc. 8). Tidwell's additional "notice" filings (Docs. 6, 7, 9, 13) will be treated as motions and will be addressed in the pending motions section of this Memorandum and Order.

## Background

Tidwell alleges that in 2015, he experienced difficulties obtaining proper envelopes and materials to send legal mail (Doc. 8 at 1). He claims that these difficulties arose when law library staff insisted on reading his outgoing communications before issuing him the envelopes needed to send his mail (*Id.*). He asserts that, although in the past he had allowed such a practice to take place, he felt that it was inappropriate and began contesting the requests to screen his mail (*Id.*). Tidwell alleges that around the time he began having trouble getting envelopes, he grieved the issue and in response received a memo addressed to him (*Id.*).

The memo, which was appended to the Amended Complaint, stated:

> You have requested legal six legal envelopes and copies of various documents. Your request for envelopes is denied at this time. When you present proof of what legal petitions or court filings you are sending to the various courts or legal entities envelopes will be provided at that time.

(Doc. 8 at 12). The memo espoused the same policy regarding requests for copies. After receiving the memo, Tidwell again attempted to grieve the issue to Nippe, but received a copy of the same memo and a letter referencing it in response (*Id.*).

Tidwell alleges that Judge Sarah Darrow, of the Central District of Illinois, entered a text Order directing the prison to give him envelopes (Doc. 8 at 2). He seeks a similar directive in the present case (*Id.* at 2, 10). Judge Darrow's Order directed the prison to provide Tidwell with the materials necessary for him to seek outside counsel prior to filing for *in forma pauperis* status (Doc. 8-1 at 4).

In the body of the Amended Complaint, Tidwell alleges that on one occasion, Morgan Teas viewed two letters he had authored seeking outside counsel and declined to provide envelopes for mailing (Doc. 8 at 3). Teas allegedly threatened to write Tidwell a ticket over the incident (*Id.*). Tidwell grieved the incident to no avail (*Id.*). Tidwell also alleges that on one occasion, Shane Gregson showed Tidwell's letters to another inmate who read them aloud (*Id.* at 4). Gregson then stated that he would not mail the letters seeking counsel, but he later returned to Tidwell's cell with envelopes for three letters (though five were requested) (*Id.*). Tidwell claims that incidents such as these became par for the course, despite the fact that he believed attorney-client privilege should have precluded such behavior (*Id.* at 3-5). Tidwell further alleges that the censorship of his correspondence prior to giving him envelopes constituted an infringement on his free speech rights (*Id.* at 5).

Tidwell also argues that if the practice of censoring his correspondence was not permissible, then the parties must have entered into a conspiracy to punish him (*Id.* at 5-6) and that conspiracy was apparent from the fact that he was the only inmate being subjected to such censorship (*Id.*). Furthermore, he claims that the censorship, particularly by Clendenin and Teas, constituted retaliation for the exercise of his First Amendment rights (*Id.* at 6)

Finally, Tidwell contends that the act of his screening his mail constituted a violation of attorney-client privilege (*Id.* at 7-8). In support of this argument, Tidwell references other cases wherein he claims that inmates received $750 per letter that was improperly opened outside the presence of the author (*Id.* at 7). Tidwell seeks similar compensation for his screened mail (*Id.*). Tidwell also alleges mail was only screened for inmates unable to afford the cost of their own envelopes, thus constituting a deprivation of Equal Protection (*Id.* at 9-10).

**Discussion**

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**   Fourteenth Amendment failure to adequately respond to Tidwell's grievance by Defendant Monica Nippe;

**Count 2**:   First and Fourteenth Amendment claims, Equal Protection claim, conspiracy claim, and retaliation claim against Warden of Menard, Lori Oakley, Jennifer Clendenin, Morgan Teas, Shane Gregson, Jane Doe, and the law library staff.

As discussed below, Counts 1 and 2 are dismissed with prejudice for failure to state a claim upon which relief may be granted and/or for failure to comply with proper pleading standards.

*Count 1*

Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). The fact that Defendants may have ignored Plaintiff's grievances does not give rise to a due process claim against them. Here, Tidwell alleges that Defendant Nippe failed to respond to his grievance because her response simply referenced a document he had already received. However, Tidwell's allegations demonstrate only that he disagreed with the outcome of his grievance, not that he was denied due process by a total lack of a response. If he disagreed with the outcome of the grievance, he could and should have pursued that disagreement further through the internal and administrative review process.

Tidwell's failure to allege that he did so or to properly identify a due process violation defeats this claim. Thus, Count 1 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

*Count 2*

The First Amendment protects a citizen's right to free speech, but its protection is not unfettered and it can be subject to a number of limitations based upon the citizen's position in society or in his or her employment. U.S. CONST., amend. I. Prisoners are such citizens subject to various restrictions on their First Amendment rights based upon their incarcerated status and the need of prison administrators to maintain control over the institution. *See Turner v. Safley*, 428 U.S. 78, 89-91 (1987) (establishing a multi-part test to assess the constitutionality of a prison restriction: (1) whether the restriction is reasonably related to a legitimate penological purpose; (2) whether there are alternate means of exercising a right that remain open to the prisoner; (3) what impact accommodating a right would have on other inmates, guards, etc.; and (4) in default, the reasonableness of the regulation); *Watkins v. Kasper*, 599 F.3d 791, 796-97 (7th Cir. 2010) (applying the *Turner* factors to a case where an inmate spoke out about fellow inmates' rights in the law library and faced alleged retaliation). One of the restrictions prisoners may be subject to is the screening of their outgoing mail.

The inspection of outgoing mail is subject to analysis under a test articulated by the United States Supreme Court in *Procunier v. Martinez,* 416 U.S. 396, 413 (1974). That test requires that (1) "the regulation or practice in question must further an important or substantial government interest" such as "security, order, and rehabilitation," and, (2) "the challenged action must be no greater than is necessary or essential to the protection of that interest." *See Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006) (internal citations omitted).

As an initial matter, any claims against Jennifer Clendenin, Morgan Teas, Shane Gregson or Jane Doe are subject to dismissal without prejudice because Tidwell failed to identify these individuals in the caption of his Amended Complaint. This Court's May 2, 2016 Order dismissing Tidwell's original Complaint with leave to amend specifically warned Tidwell that an amended complaint would entirely supersede the original complaint (Doc. 5 at 3-4). Accordingly, although Tidwell named these individuals in his original Complaint, his Amended Complaint is insufficient to bring claims against them. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint must name all the parties). Therefore, the Court will not entertain claims against Clendenin, Teas, Gregson, or Jane Doe.

As to the defendants named in the caption—Warden of Menard and Lori Oakley—any claims against these two individuals fail because Tidwell's allegations do not establish a connection between conduct of these individual actors and a constitutional violation. Tidwell's original Complaint was dismissed for a failure to associate specific individuals with specific conduct. Tidwell parroted this instruction back to the Court in the introductory paragraph of the Amended Complaint but failed to follow it. Section 1983 liability is premised on personal responsibility on behalf of an individual defendant for causing or participating in a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) and Tidwell has not identified how either of these individuals caused or participated in a constitutional deprivation. Accordingly, Defendants Warden of Menard and Oakley shall be dismissed from this action.

Furthermore, as to the named defendant "the whole law library staff," the Court will not allow a claim to proceed on such a basis. Again, as the Court instructed in its dismissal of Tidwell's original Complaint, a claim is not sufficiently stated unless it provides a clear

statement of who was personally involved in a constitutional deprivation and what they did to deprive the plaintiff of his rights. Generically naming "the whole law library staff" runs afoul of this requirement. As such, "the whole law library staff" is dismissed from this action with prejudice

Civil conspiracy claims are cognizable under § 1983. *See Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Id*. at 1007. Here, Tidwell has not proffered sufficient information to support a claim for a conspiracy. He has not specifically named the parties who participated in an alleged conspiracy nor has he alleged when they met to hatch a plan to conspire against him. Accordingly, to the extent Tidwell seeks to state a conspiracy claim, that claim is dismissed without prejudice.

Finally, a plaintiff may state a claim for retaliation by identifying the exercise of his First Amendment rights and a subsequent retaliatory act. Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted). Though Tidwell alleges an exercise of his First Amendment rights via legal mail and retaliation by being deprived mailing supplies, he specifically associates this claim

with Clendenin and Teas. As previously discussed, he has not named these individuals in the caption of the operative complaint, so he cannot properly state a claim against them. Therefore, Tidwell's retaliation claim is dismissed without prejudice.

### Pending Motions

Plaintiff has filed a number of documents titled "notices" wherein he seeks to supplement his pleadings with additional information (Docs. 6, 7, 9). The Court explicitly advised him that such piecemeal filings would not be accepted in its May 2, 2016 Order. Accordingly these "motions" or "notices" are hereby **DENIED**.

Plaintiff also requests injunctive relief in the form of an order directing the prison to provide him with adequate materials to attempt to retain his own counsel. This request is rendered **MOOT** by the dismissal of his Amended Complaint and is hereby **DENIED**.

### Disposition

For the reasons set forth above, **COUNT 1** is **DISMISSED** with prejudice as to Defendant **NIPPE** for failure to state a claim upon which relief may be granted. Further, **COUNT 2** is **DISMISSED** without prejudice as to named Defendants **WARDEN OF MENARD AND LORI OAKLEY.** The entire complaint is also **DISMISSED** without prejudice as to Jennifer Clendenin, Morgan Teas, Shane Gregson, Jane Doe, and the "law library staff" for failure to properly name these individuals in the case caption. This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g), because the complaint fails to state a claim upon which relief may be granted.

A dismissal with or without prejudice may constitute a strike under § 1915(g). *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011) (noting that a "dismissal is a dismissal, and provided that it is on one of the grounds specified in § 1915(g) it counts as a strike, . . . , whether

or not it's with prejudice."). Here, Tidwell has been given an opportunity to amend his complaint, but his amendment was insufficient to proceed beyond screening. Accordingly, it is now appropriate to assess a strike. Tidwell's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk is directed to **TERMINATE MENARD C.C.** from this action because Tidwell named this party as a defendant in his original Complaint (Doc. 1), but did not name this party in his Amended Complaint (Doc. 8).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  October 3, 2016**

s/ STACI M. YANDLE<br>
**STACI M. YANDLE**<br>
**United States District Judge**