## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CLEOTHER TIDWELL,**        )
                                             )
        **Plaintiff,**        )
                                             )
**vs.**                               )        **Case No. 16−cv–0384−SMY**
                                           )
**WARDEN BUTLER,**        )
**JENNIFER CLENDENIN,**    )
**MORGAN TEAS, and**      )
**MR. SHANE GREGSON,**   )
                                           )
        **Defendants.**    )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Cleother Tidwell, an inmate in Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff's claims pertain to constitutional violations that allegedly occurred while he was housed at Menard Correctional Center ("Menard"). In his Second Amended Complaint, Plaintiff claims Defendants violated his rights by reading and censoring his outgoing legal mail. (Doc. 25). This case is now before the Court for a preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune

1

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Second Amended Complaint

According to Plaintiff, Menard has adopted a policy or practice that imposes limitations on the amount of scribe and mailing materials the prison will provide to indigent prisoners at tax payer expense. Specifically, Plaintiff alleges that Menard furnishes indigent prisoners with two free legal envelopes per month and 20 sheets of paper ("no questions asked"). (Doc. 25, pp. 5, 39). If an indigent prisoner requires more than the allotted two envelopes per month, he must establish, to the satisfaction of the law library staff (Clendenin, Teas and Gregson), that the subject correspondence is legal correspondence or related to a legal proceeding. *Id.*

It is unclear to the Court whether the subject policy is a formal written policy or an informal practice. The Second Amended Complaint includes Plaintiff's descriptions of the policy or practice, but does not include a copy of a written policy or appear to be quoting directly from a written policy. However, Plaintiff has attached the following documents that appear to relate to the subject policy or practice: (1) indigent legal supplies request form (Doc. 25, p. 72);

(2) grievance denial indicating that Plaintiff's request for legal envelopes is denied until Plaintiff provides "proof" pertaining to the legal documents he is sending (Doc. 25, pp. 66-67); and (3) memorandum, dated May 5, 2015, indicating that Plaintiff's request for envelopes is denied until Plaintiff provides "proof of what legal petitions or court filings [he is] sending…" (Doc. 25, p. 60).[1] Hereinafter, for ease of reference, the Court refers to the challenged policy or practice as "Menard's Outgoing Mail Policy."

Plaintiff alleges that Menard's Outgoing Mail Policy is unconstitutional, both facially and as applied. He also alleges that Clendenin, Morgan and Teas repeatedly violated his constitutional rights by reading and censoring his outgoing legal mail. With regard to these claims, Plaintiff alleges that when he requested additional legal envelopes for the purpose of mailing correspondence to attorneys, Clendenin, Morgan and Teas insisted on reading the legal correspondence and imposed content-based restrictions on the same. (Doc. 25, p. 5) ("each time I would need a[n] envelope past the standard two per month, I had to attach or include what document I needed to mail in the requested envelopes, to the indigent form so that the staff Jennifer Clendenin, Morgan Teas, Shane Gregson, could read and decide if it was worth giving me a[n] envelope. Their reading included letters I needed to send to attorneys and lawyers."); (Doc. 25, p. 14) (stating that Teas regularly refused to provide Plaintiff with additional legal envelopes if she "did not like" what the correspondence said); (Doc. 25, p. 18) ("When Clendenin, Teas, or Gregson did not like or agree with the letters content – no envelope was given to me unless I rewrote the letter to their liking."); (Doc. 25, p. 28) ("indigent prisoners at Menard have to let the prison *i.e.* Clendenin, Teas, Gregson read the prisoner's legal mail in

---

[1] Plaintiff also alleges that "Menard has a policy that allows the prison staff to censor and reject indigent prisoners [sic] outgoing mail to attorneys." (Doc. 25, p. 59) (referencing the May 5, 2015 memorandum). Additionally, Plaintiff claims that Menard has "pre printed forms for indigent prisoners that allow the prison staff discretion to read and censor prisoner communications to lawyers." *Id.*

order to get a legal envelope"); (Doc. 25, p. 46) (Clendenin, Teas, and Gregson read letters addressed to identifiable attorneys); (Doc. 25, p. 61) (alleging Clendenin regularly read Plaintiff's letters to attorneys when he needed legal envelops and refused to provide legal envelopes unless Plaintiff "rewrote the offending letter"). Plaintiff further alleges that on more than one occasion, after Clendenin refused to provide additional legal envelopes, Plaintiff electronically filed attorney correspondence in pending litigation so the attorney of record could read the correspondence "off the wire." (Doc. 25, p. 17).[2]

According to the Second Amended Complaint, Plaintiff often "complained" or "balked" about being denied legal envelopes and/or about requests to review his outgoing correspondence. (Doc. 25, pp. 14-23, 45). He contends that on one occasion, when he complained to Teas regarding her refusal to give him a legal envelope, Teas threatened him with disciplinary action. (Doc. 25, pp. 14-15). Additionally, on May 5, 2015, Plaintiff received a memorandum (discussed above) denying his request for additional legal envelopes and stating that his request would be granted upon providing "proof of what legal petitions or court filings" he intended to send. (Doc. 25, p. 60). Plaintiff maintains that Teas' threat of disciplinary action and the memorandum were acts of retaliation for Plaintiff's complaints about being denied legal envelopes. (Doc. 25, pp. 14-23, 45). Additionally, Plaintiff contends that the memorandum was retaliation for his "speech to attorneys." (Doc. 25, p. 23).

Plaintiff also casts the above allegations as conspiracy claims. (Doc. 25, pp. 14-16). He asserts that his conspiracy claims are viable, in part, because when Clendenin was promoted as the head of the law library, his requests for legal envelopes were subjected to a higher level of scrutiny. (Doc. 25, p. 15) (alleging that a conspiracy exists because Teas began refusing legal

---

[2] Plaintiff contends he has attached a copy of one such letter but nothing is attached. (Doc. 25, p. 17).

envelopes only after Clendenin was promoted to head of the law library); (Doc. 25, p. 16) (alleging it "follows logically" that Clendenin is "the author of the conspiracy plot" because Teas "got real shitty with me after" Clendenin "took over.").

Plaintiff filed grievances regarding the May 5, 2015 memorandum in June and October 2015. (Doc. 25, pp. 52, 55-56, 65-67). He alleges that he "complained" to Butler "face to face" and that Butler "justified [Clendenin's] reading and censoring by referring Plaintiff to the [May 5, 2015 memorandum]." (Doc. 25, p. 64).

At one point in the Second Amended Complaint, Plaintiff suggests that the alleged constitutional violations are ongoing. (Doc. 25, p. 44). However, the record reflects that Plaintiff is no longer housed at Menard and has been transferred to Lawrence. (Docs. 10 & 12). Further, at another point in the Second Amended Complaint, Plaintiff states that the alleged constitutional violations occurred between June 2013 and June 2016. (Doc. 25, p. 5).

## Plaintiff's Claims

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –**    Menard's Outgoing Mail Policy is unconstitutional on its face.

**Count 2 –**    Menard's Outgoing Mail Policy is unconstitutional as applied to Plaintiff.

**Count 3 –**    First Amendment claim against Clendenin, Teas and Gregson for violating Plaintiff's rights to free speech and expression by censoring Plaintiff's outgoing legal mail.

**Count 4 –**    First and/or Fourteenth Amendment claim against Clendenin, Teas and Gregson for interfering with Plaintiff's outgoing attorney communications.

**Count 5 –**    Fourteenth Amendment equal protection claim.

**Count 6 –**     First Amendment retaliation claim against Clendenin, Teas, and Gregson.

**Count 7 –**     Civil conspiracy claim against Clendenin, Teas, and Gregson.

As is discussed in more detail below, Counts 3 and 4 will be allowed to proceed past threshold. In light of Plaintiff's transfer to Lawrence Correctional Center, Counts 1 and 2 will be dismissed without prejudice as moot. Counts 5, 6 and 7 will be dismissed without prejudice for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

## Preliminary Matters

### Dismissal of Defendant Butler

"The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quotation omitted). Personal responsibility, however, does not require direct participation in the constitutional deprivation. *Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000). Rather, the personal responsibility requirement can be met if the defendant directed the conduct causing the constitutional violation, or if it occurred with his knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). That is, the official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*[3] Additionally, allegations that an agency's senior officials were personally

---

[3] Applying this standard, the Seventh Circuit has held that "a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (citing

responsible for creating the policies, practices and customs that caused the constitutional deprivation suffice to demonstrate personal responsibility. *Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002).

In the instant case, Plaintiff does not allege that Butler, Menard's former warden, directly participated in the alleged constitutional violations. Nor does he allege that Butler was personally responsible for establishing or implementing Menard's Outgoing Mail Policy. Instead, Plaintiff's only allegation as to Butler is that Plaintiff "complained" to Butler "face to face" and that she responded by referring Plaintiff to the May 5, 2015 memorandum. (Doc. 25, p. 64). This allegation suggests that Plaintiff is attempting to establish that Butler is subject to liability because she was aware of and condoned a constitutional violation. However, the allegation fails to provide enough factual content to state a plausible claim against Butler for committing any constitutional violation.

Accordingly, to the extent that Plaintiff intended to bring one or more claims against Butler in her individual capacity, such claims shall be dismissed without prejudice for failure to state a claim. Further, as the *former* warden of Menard, Butler is not an appropriate defendant for any official capacity claims seeking prospective equitable relief and, as is explained more fully below, Plaintiff's official capacity claims for prospective relief are moot in light of his transfer to Lawrence. Therefore, Butler shall be dismissed from this action without prejudice.

### Prospective Injunctive and Declaratory Relief

Plaintiff's prayer for relief only seeks monetary damages. (Doc. 25, p. 6). Nonetheless, within the body of the Second Amended Complaint, Plaintiff repeatedly challenges the

---

*Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). However, the Seventh Circuit has also indicated that knowledge of misconduct, standing alone, is not enough for liability to attach. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017) ("inaction following receipt of a complaint about someone else's conduct is not a source of liability").

constitutionality of Menard's Outgoing Mail Policy (both on its face and as applied). These allegations suggest that Plaintiff is seeking prospective injunctive and declaratory relief with respect to the policy. Accordingly, the Court construes the Second Amended Complaint as including claims challenging the constitutionality of the policy – both facially and as applied (Counts 1 and 2). Further, the Court construes Counts 1 and 2 as seeking injunctive and declaratory relief as opposed to monetary damages.

## Discussion

### Relevant Authority (Counts 1-4)

#### Outgoing Mail

Prisoners have protected First Amendment Interests in both sending and receiving mail. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). Nonetheless, prison administrators may place restrictions on incoming and outgoing mail. *Id.* When the challenged regulation or practice affects *incoming* mail, the standard set forth in *Turner v. Safely*, 482 U.S. 78 (1987) – that First Amendment restrictions on prisoners must be "reasonably related to legitimate penological interests" – is applied. However, because the interest in prison security is diminished for outgoing mail, the Supreme Court has applied a heightened standard of review for regulations affecting outgoing mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) ("The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials."). *See also Koutnik v. Brown*, 456 F.3d 777, 784 & n. 4 (7th Cir. 2006) (affirming application of heightened standard to regulations affecting outgoing mail).

The heightened standard applicable to outgoing mail is set forth in *Procunier v. Martinez,* 416 U.S. 396, 413-14 (1974). In *Procunier ,* the Supreme Court considered a regulation which

censored outgoing inmate mail that contained "inflammatory" statements or was deemed to "magnify grievances" or "unduly complain." *Procunier,* 416 U.S. at 399. In finding the regulation unconstitutional, the *Procunier* court set forth a two-part test for evaluating censorship of outgoing mail: "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id.* at 413; *see also Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). Such interests include "security, order, and rehabilitation." *Procunier*, 416 U.S. at 413. Second, the challenged action "must be no greater than is necessary or essential to the protection" of that interest. *Id.*

Legal Mail

Legal mail is subject to somewhat greater protection than personal mail, in part because the right of access to the courts is involved and must be zealously safeguarded.[4] *Campbell v. Miller*, 787 F.2d 217, 225, n. 14 (7th Cir. 1986); *see also Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973) (all other rights of an inmate are illusory without right of access). "Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) citing *Wolf v. McDonnellf*, 418 U.S. 539, 577 (1974); *see also Gaines*, 790 F.2d at 1306. Isolated incidents of interference with legal mail are generally insufficient to maintain a claim. *See Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D. Ill. 1987), aff'd, 854 F.2d 162 (7th Cir. 1988). However, a prisoner's claim of ongoing interference with his legal mail is generally

---

[4] The extra protections afforded legal mail are generally reserved for privileged correspondence between inmates and their attorneys. *Wolff v. McDonnell*, 418 U.S. 539, 574 (1974); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1995).

sufficient to state a claim. *Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993).

The Seventh Circuit has clarified that, because a confidential communique with a lawyer is aimed to win a case rather than to enrich the marketplace of ideas, it is "more straightforward" to view an interference-with-legal-mail claim as infringing on the right of access to the courts as opposed to the right of free speech. *Guajardo–Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010); *see also id.* at 801 (prison officials reading mail to/from prisoners who sue them "is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer.").[5] Thus, as with all claims involving the right of access to the courts, a claim of interference with a prisoner's communications with his lawyer cannot proceed absent a showing of hindrance. *See Guajardo-Palma*, 622 F.3d at 805-06  ("whether the unjustified opening of [attorney mail] is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation….we think [as with claims challenging the adequacy of a prison's library or legal assistance program] there must b[e] a showing of a hindrance").  With respect to establishing a hindrance, the Seventh Circuit has explained:

> [P]roof of a *practice* of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance.  The reason is that knowledge, inferred from a policy or practice, by a prisoner's lawyer that prison officials are likely to read his communications with his client (because they refuse to let him be present when they open the lawyer's letter to see whether it contains contraband or other illicit material) will to a high probability reduce the candor of those communications.

*Id.* at 805.  (internal citations omitted) (emphasis in original).

---

[5] *See also Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980).  "The Fourteenth Amendment guarantees meaningful access to courts, [and] ... the opportunity to communicate privately with an attorney is an important part of that meaningful access."

State-Funded Mailing Material

" 'It is indisputable that indigent inmates must be provided at state expense' with the basic material necessary to draft legal documents and with stamps to mail them." *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986) (quoting *Bounds v. Smith,* 430 U.S. 817, 824 (1977)). "However, although prisoners have a right of access to the courts, they do not have a right to unlimited free postage." *Id.* Thus, "[p]rison authorities are able to make 'a reasonable attempt to balance the right of prisoners to use the mails with prison budgetary considerations.' " *Id.* (citing *Bach v. Coughlin*, 508 F.2d 303, 307-08 (7th Cir. 1974)). *See also Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002) ("The Supreme Court has never held that access to the courts must be free; it has concluded, rather, that reasonably adequate opportunities for access suffice.") (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).

In *Gaines*, the Seventh Circuit considered, among other things, a facial challenge to Illinois Department of Corrections ("IDOC") regulations governing outgoing state-paid mail.[6] The subject regulations allowed inmates to send three first class letters per week at State expense.[7] After that, prisoners could send additional letters at their own expense. *Id.* at 1303. The regulations also included a "safety valve" provision which allowed indigent inmates to send "reasonable" amounts of legal mail at State expense. *Id.* The Appellate Court concluded the regulations were constitutional, noting:

> We cannot say that, on its face, this regulation amounts to an unconstitutional impediment on an inmate's access to courts. Nor do we believe that the terms "reasonable" and "legal" are, as used in the context of this regulation, necessarily vague in the constitutional sense. These terms are certainly susceptible to constitutional—indeed salutary—application. Should prison officials abuse these

---

[6] IDOC Rules 525.130(a) and (b).
[7] Other courts are even more strict. *See, e.g., Hoppins v. Wallace*, 751 F.2d 1161 (11th Cir.1985) (furnishing two free stamps a week to indigent prisoners is adequate to allow exercise of the right to access to the courts).

regulations by interpreting them in such a way as to block a prisoner's legitimate access to the courts, the prisoner is not without remedy.

*Id.* at 1308.

The *Gaines* Court also considered a facial challenge to IDOC regulations governing incoming privileged mail. This regulation allowed prison officials to open incoming privileged mail "in the presence of the committed person to whom it is addressed to inspect for contraband, to verify the identity of the sender, and to determine that nothing other than legal or official matter is enclosed." *Id.* at 1305-06. Relying on *Wolff v. McDonnell, 4*18 U.S. 539 (1974)*,* the Seventh Circuit concluded that this regulation was also constitutional. *Id.* at 1306. In so holding, the Appellate Court observed as follows:

> Quite obviously, a different situation would be present if the prison officials actually read the privileged mail. However, that "as applied" argument is not before us today. Rather, the appellants have simply challenged a Department regulation which, on its face, allows prison officials to search privileged mail for contraband while the prisoners look on. That is precisely what *Wolff* permits.

*Id.*

### Counts 1 **and 2** – *Seeking Prospective Injunctive and Declaratory Relief*

Plaintiff asserts that Menard's Outgoing Mail Policy provides prisoners with two legal envelopes and 20 sheets of paper per month, at tax payer expense. The number of envelopes provided (two per month at state expense) is more restrictive than the regulation upheld in *Gaines* (three first class letters per week at state expense). Additionally, like the regulation at issue in *Gaines*, Menard's Outgoing Mail Policy appears to include a "safety valve" provision for indigent prisoners. Although not entirely clear, it appears that under this provision, indigent prisoners may obtain additional mailing materials for legal mail upon demonstrating that the subject correspondence relates to a legal matter. Plaintiff contends that this policy is unconstitutional on its face. He also contends that the policy is unconstitutional as applied,

because his receipt of additional legal envelopes was conditioned on allowing Menard officials to read and censor his outgoing legal correspondence.

As previously noted, Plaintiff has been transferred to Lawrence and is no longer housed at Menard. Moreover, nothing in the record raises a realistic possibility that Plaintiff will be returned to Menard. As such, Counts 1 and 2, seeking prospective injunctive and declaratory relief are moot and will be dismissed without prejudice. *See*, *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996) (if prisoner transferred to another prison, his request for injunctive and declaratory relief is moot unless he can demonstrate likelihood of re-transfer). *See also Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir.2009); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir.1991).

### Count 3 – First Amendment Claim Pertaining to Censoring Plaintiff's Outgoing Legal Mail

Plaintiff claims that Defendants routinely applied content-based restrictions to his outgoing legal mail. The review and censorship of Plaintiff's outgoing correspondence only occurred when Plaintiff requested more state-funded mailing supplies than permitted under Menard's Outgoing Mail Policy. At this time, the Court cannot determine if the challenged conduct is a permissible limitation on state-funded mailing material as discussed in *Gaines* and related authority and/or whether the conduct survives scrutiny under the heightened standards applicable to outgoing legal mail. Therefore, Count 3 shall proceed. Defendants will have an opportunity, after the record is more fully developed, to demonstrate that their actions complied with the First Amendment.

### Count 4 – Interference with Attorney Communications

The Seventh Circuit instructs that it is more "straightforward" to view a claim of interference with attorney communications as being based in the right of access to the courts as opposed to the right to free speech. *Guarjardo-Palma,* 622 F.3d at 802. In order to maintain a

claim of interference with a prisoner's communications with his lawyer, the prisoner must demonstrate that the challenged conduct hindered his efforts to pursue a legal claim. *Id*. at 805. In that regard, "proof of a practice of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance." *Id*.

In the instant case, Plaintiff alleges an ongoing practice of reading and censoring his outgoing mail to attorneys. Under *Guarjardo-Palma*, this alleged practice may establish a hindrance that is sufficient to proceed on an access to the courts claim. However, the objectionable practice only occurred when Plaintiff requested more state-funded mailing materials than permitted under Menard's Outgoing Mail Policy. Therefore, as with Counts 1 - 3, such a claim will have to be reconciled with the principle that there is no constitutional entitlement to subsidy." *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002). That is, "[p]rison authorities are able to make 'a reasonable attempt to balance the right of prisoners to use the mails with prison budgetary considerations.' " *Gaines*, 790 F.2d at 1308 (citing *Bach*, 508 F.2d 307-08). As is the case with respect to Counts 1-3, further development of the record is necessary to determine whether a constitutional violation occurred. Accordingly, Count 4 shall receive further review.

### Count 5 – Equal Protection

Plaintiff also casts his allegations pertaining to Menard's Outgoing Mail Policy as equal protection claims, alleging the policy treats indigent prisoners differently than those with means in that indigent prisoners do not have unlimited access to scribe and mailing materials. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a

suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). As Plaintiff acknowledges, indigent prisoners are not a suspect class. *Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998); *see also Rivera v. Allin*, 144 F.3d 719, 727 (7th Cir. 1998). Further, Plaintiff's equal protection claim does not involve a fundamental right. A fundamental right is one that is explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973). Although the right of access to the courts is a fundamental right, as previously discussed, it does not mandate that prisons provide unlimited access to scribe and mailing materials at tax payer expense.

"Where disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). Further, "[p]rison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* In the this case, prison budgetary considerations could have rationally animated Menard's Outgoing Mail Policy. Thus, equal protection principles afford Plaintiff no relief.

The result is the same even when Plaintiff's allegations are construed as a "class of one" equal protection claim. A "class of one" claim arises when a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's allegations make clear that all indigent prisoners were subject to the same outgoing mail policy. These allegations are at odds with the notion that Plaintiff was singled out and treated differently from other indigent prisoners. The fact that Plaintiff received a memorandum denying his request for additional envelopes also does not support a "class of one" claim. The

memorandum simply indicates that Plaintiff's request was denied pursuant to Menard's Outgoing Mail Policy, a policy that Plaintiff alleges was applicable to all indigent inmates. Accordingly, Count 5 will be dismissed without prejudice for failure to state a claim.

### Count 6 - First Amendment Retaliation

To establish a § 1983 claim of First Amendment retaliation, an inmate must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted). None of Plaintiff's allegations are sufficient to state a colorable claim for retaliation.

Plaintiff claims that he was retaliated against (in the form of threatened discipline and/or via the May 5, 2015 memorandum) for complaining or "balking" about being denied legal envelopes. In a First Amendment retaliation claim involving an inmate's comments or complaints, the question is whether the prisoner engaged in speech in a manner consistent with legitimate penological interests. *Watkins v. Kasper,* 599 F.3d 791, 794-95 (7th Cir. 2010); *Bridges v. Gilbert,* 557 F.3d 541, 551 (7th Cir. 2009). Speech that has a "negative impact" on a legitimate penological interest, such as prison discipline, may be validly restricted. *Watkins*, 599 F.3d at 797 (no protected right where a prison law clerk "openly challeng[ed] [the law librarian's] directives in front of other prisoner law clerks," thereby "imped[ing] her authority and her ability to implement library policy"). In particular, inmate speech that is insubordinate, disrespectful or undermining of prison officials' authority is not protected by the First Amendment, especially if it is done in front of other inmates. *Id. See also Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected.").

Plaintiff's references to "balking" or complaining are too vague to suggest that Plaintiff was engaging in a protected activity. As such, these allegations fail the first requirement for a retaliation claim.

Plaintiff's also claims that the May 5, 2015 memorandum was retaliation for his communications with his attorneys. This suggests that Plaintiff was engaging in protected conduct – privileged communications with his attorneys. However, there is no causal connection between the protected conduct and the alleged act of retaliation. The memorandum indicates that Plaintiff's request for legal envelopes was denied in accord with Menard's Outgoing Mail Policy. The Second Amended Complaint alleges the subject policy is applicable to all indigent inmates and has been in effect since Plaintiff arrived at Menard (before he engaged in the protected conduct). Accordingly, this claim fails to meet the third requirement for a retaliation claim. For these reasons, Count 6 will be dismissed without prejudice for failure to state a claim.

### Count 7 – Civil Conspiracy

Plaintiff's civil conspiracy claim against Defendants also fails. Allegations of a conspiracy have routinely been held to a higher pleading standard than other allegations. *See Geinosky v. City of Chicago*, 675 F.3d 743, 740 (7th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under *Twombly*, the Complaint must allege a "plausible account of a conspiracy." *Id*. The mere suspicion of a conspiracy will not suffice. Likewise, conclusory allegations of a conspiracy give rise to no claim.

Plaintiff alleges that his requests for legal envelopes received more scrutiny when Clendenin was promoted within the law library staff. According to Plaintiff, this necessarily suggests that Clendenin was the head of a conspiracy to retaliate against Plaintiff and/or to otherwise violate his constitutional rights. Again, these vague and conclusory allegations are

insufficient to survive threshold review. Therefore, Count 7 will be dismissed without prejudice for failure to state a claim.

### Filing Fee

This case was opened without payment of a filing fee or the filing of a Motion and Affidavit to Proceed in District Court Without Prepaying Fees or Costs ("IFP Motion"). On April 6, 2016, the Clerk of the Court sent Plaintiff a letter advising him of this fact. (Doc. 3). He was instructed to pay the full $400.00 filing fee or file a properly completed IFP Motion within thirty days and warned that failure to comply would result in dismissal of the instant action. Plaintiff was also instructed to file a trust fund account statement for the six-month period preceding commencement of this action. A review of the docket reveals that Plaintiff has not paid his filing fee or filed an IFP Motion with the requisite trust fund account statement.

If Plaintiff intends to proceed with this action, he must pay the filing fee or file a properly completed IFP Motion and trust fund account statement. Accordingly, Plaintiff is **ORDERED** to provide the Court with a filing fee of $400.00 or a properly completed IFP Motion on or before **July 24, 2017**. **Failure to comply with this Order shall result in dismissal of this action for want of prosecution and/or for failure to comply with a court order under Federal Rule of Civil Procedure 41(b)**.

### Pending Motions

Plaintiff has filed a Motion for Reconsideration (Doc. 22) and a Motion under Rule 54(b) (Doc. 27).[8] Both motions challenge the Court's prior dismissals of earlier iterations of

---

[8] In this motion, Plaintiff offers the Court a "settlement." Plaintiff states that if the Court will refund Plaintiff's filing fee, he will voluntarily dismiss his suit. First, as noted above, Plaintiff has not yet paid his filing fee. Second, the obligation to pay a filing fee attaches at the time of filing and remains despite the disposition of the case. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir.1998). Accordingly, to the extent that Plaintiff asks to voluntarily dismiss his complaint in exchange for a filing fee refund (or in this case a filing fee cancellation),

Plaintiff's Complaint and are therefore, **DENIED** as **MOOT**.[9]

## Piecemeal Filings

Despite prior warnings (Doc. 5, Doc. 14), Plaintiff continues to file supplemental piecemeal pleadings. (Doc. 26, Doc. 28). The Court does not accept piecemeal filings. Thus, these pleadings have been disregarded by the Court.

## Show Cause Order Regarding Vexatious Filing

On June 2, 2017, Plaintiff filed a Rule 54(b) Motion. (Doc. 27). The pleading is both abusive and frivolous. In light of the Plaintiff's history of filing frivolous and inappropriate pleadings, Plaintiff's Rule 54(b) Motion will be the subject of a Show Cause Order filed contemporaneously herewith. The Court notes that Plaintiff's Motion to Reconsider (Doc. 22) and Second Amended Complaint (Doc. 25) also contain harassing commentary. Although these pleadings contain improper material, they will not be the subject of a Show Cause Order as they were filed prior to Plaintiff receiving his first admonishment that explicitly discussed the consequences for continued misconduct. These matters are fully addressed in the Court's contemporaneously filed Show Cause Order.

## Disposition

**BUTLER** is **DISMISSED** from this action without prejudice for failure to state a claim. The Clerk of the Court is **DIRECTED** to terminate **BUTLER** as a party in CMECF.

**IT IS HEREBY ORDERED** that **COUNT 1** and **COUNT 2** shall be **DISMISSED** without prejudice as **MOOT** in light of Plaintiff's transfer to Lawrence.

---

the request is **DENIED**. Plaintiff, of course, is free to obtain a voluntary dismissal in accord with Federal Rule of Civil Procedure 41. However, a voluntary dismissal will not alter his filing fee obligations.

[9] Plaintiff's acknowledges that the Motion to Reconsider (Doc. 22) is moot. (Doc. 24).

**IT IS FURTHER ORDERED** that **COUNT 3** and **COUNT 4** shall **PROCEED** against **CLENDENIN, TEAS** and **GREGSON,** in their individual capacities.

**IT IS FURTHER ORDERED** that **COUNT 5, COUNT 6** and **COUNT 7** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 3** and **4** the Clerk of Court shall prepare for **CLENDENIN, TEAS** and **GREGSON:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each Defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper

received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: June 23, 2017**

s/ Staci M. Yandle
**U.S. District Judge**